IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| **ROBERT HAGEL,** | CV 04-1770-BR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| **PORTLAND STATE UNIVERSITY,**<br>**DR. DOUGLAS N. SAMUELS, DEAN**<br>**WENDY ENDRESS, ASST. DEAN**<br>**MICHELLE TOPPE, and DON YACKLEY,** | |
| Defendants. | |

**ANN BERRYHILL WITTE**
812 SW Washington Street, #910
Portland, OR  97205
(503) 223-6066

    Attorney for Plaintiff

**HARDY MYERS**
Attorney General
**PHILLIP M. BENDER**
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301
(503) 378-6313

    Attorneys for Defendants

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion for Summary Judgment (#20). For the reasons that follow, the Court **GRANTS** Defendants' Motion as to all of Plaintiff's claims.

## BACKGROUND

Plaintiff Robert Hagel was a student at Portland State University (PSU) until Defendant Douglas Samuels, Vice Provost for Student Affairs, suspended Hagel on November 19, 2004, on the ground that he constituted a substantial threat to the "health, personal safety, or property" of PSU.

### I. Administrative Proceedings

On July 29, 2004, Defendant Michelle Toppe, Assistant Dean of Students at PSU, sent Hagel a letter notifying him the Office of Student Affairs had received a complaint that Hagel might have violated PSU's Student Code of Conduct. Toppe scheduled a meeting with Hagel to discuss the allegations on August 9, 2004.

Hagel attended the August 9, 2004, meeting with his counsel, Ann Witte. At that meeting, Toppe discussed allegations that Hagel had flushed cat litter down the toilet in the Ondine residence hall, which caused damage to the plumbing. Toppe also discussed an allegation that Hagel had posted to his dorm room door a note in which he stated Assistant Director of Residence Life "Scott Nine is a bitch ass liar! Probably fucks his son in

2 - OPINION AND ORDER

the ass!" Both of these actions would constitute violations of the PSU Student Code of Conduct. Hagel requested to have his case heard by the Student Conduct Committee.

On September 9, 2004, the Student Conduct Committee heard Hagel's case and thereafter found Hagel violated the PSU Student Code of Conduct. On September 21, 2004, Toppe sent Hagel a letter in which she informed him of the Committee's decision, advised him that she concurred with the decision, and imposed three sanctions: (1) restitution for the damages to the plumbing in Ondine; (2) loss of student-housing privileges starting October 12, 2004; and (3) placement on disciplinary probation for one year with the condition that any violations of the Student Code of Conduct occurring within that time likely would result in suspension. Hagel appealed this decision to Defendant Don Yackley, Director of Residence Life. Samuels, in turn, heard the appeal on November 2, 2004, and upheld the Committee's decision.

Earlier on August 31, 2004, Defendant Endress, Vice Provost for Student Affairs, sent Hagel a letter in which Endress stated the Office of Student Affairs had received additional complaints that Hagel again had violated the Student Code of Conduct. Endress scheduled a meeting with Hagel to discuss these additional claims on September 22, 2004. Endress later rescheduled the meeting for September 28, 2004.

At the September 28, 2004, meeting, Endress discussed four

3 - OPINION AND ORDER

conduct complaints received by the Office of Student Affairs regarding Hagel: (1) On August 23, 2004, Hagel refused to leave Toppe's office upon her request; (2) on August 27, 2004, Hagel refused to leave Ondine dormitory during a fire drill; (3) on September 2 and 14, 2004, Hagel flushed cat litter down the toilet in Ondine; and (4) on September 15, 2004, Hagel deposited human feces in the Ondine elevator. Hagel elected to have a hearing on these charges before the Student Conduct Committee.

On November 17, 2004, the Student Conduct Committee convened to hear the second case and thereafter found Hagel responsible on all charges. On December 15, 2004, Endress sent Hagel a letter in which she informed him of the decision of the Student Conduct Committee, advised him that she concurred with the decision, and imposed the following sanctions: (1) Hagel would be allowed on campus only to attend class for the remainder of the academic year; (2) if Hagel needed to come on campus for a purpose other than to attend class, he was required to make an appointment before any visit and to have a Campus Police Security Officer (CPSO) escort him; (3) Hagel was prohibited from initiating any contact with members of the Office of Student Affairs, the Student Conduct Committee, and any witnesses from the hearing; and (4) Hagel was placed on disciplinary probation for one year.

On October 20, 2004, Toppe sent Hagel a letter in which she stated the Office of Student Affairs again had received several

complaints of violations by Hagel of the Student Code of Conduct, including: (1) reports of threats to harm or to kill Scott Nine and his family, (2) reports that Hagel had guns in his dorm room, (3) reports of Hagel's forced entry into a PSU building and engagement in a physical altercation with a student working in the office there, and (4) reports of Hagel's presence in the PSU library after the building was closed. Hagel elected to have this case heard before the Student Conduct Committee. Toppe scheduled an investigatory meeting regarding the third set of complaints on November 23, 2004, and, pursuant to Hagel's request, Toppe scheduled the case to be heard by the Student Conduct Committee on December 1, 2004.

On November 19, 2004, Samuels sent Hagel and his attorney a letter in which he suspended Hagel pending resolution of the final Student Council complaint based on Samuels's finding by clear and convincing evidence that Hagel's presence at PSU constituted a substantial threat to health, personal safety, or property of PSU. In support of this decision, Samuels noted: (1) on October 23, 2004, Hagel threatened the lives of students using the computer lab; (2) two members of the Student Conduct Committee reported incidents in which Hagel intimidated them, which caused them to recuse themselves from additional hearings involving Hagel; (3) two students who acted as witnesses against Hagel reported fear and concern for their personal safety; and

(4) one of the students who participated in a hearing involving Hagel reported Hagel made statements that intimidated and threatened her during a break in the proceedings. The Student Conduct Committee is scheduled to hear Hagel's case regarding these allegations on June 30, 2005.

## II. State Court Proceedings

On September 24, 2004, Hagel filed an action in Multnomah County Circuit Court (Hagel I) alleging PSU "unlawfully ousted" him from his room in Ondine in violation of Or. Rev. Stat. § 90.105, Oregon's Residential Landlord and Tenant Act and seeking a temporary restraining order. The court denied Hagel's motion for a temporary restraining order and found Oregon landlord-tenant law did not apply to PSU dormitories. Hagel voluntarily dismissed Hagel I.

On October 13, 2004, Hagel filed another action in Multnomah County Circuit Court (Hagel II) alleging PSU violated Oregon landlord-tenant law when it terminated his housing contract. On November 1, 2004, the action went to trial. The court granted PSU's motion to dismiss at trial and again found Oregon landlord-tenant law did not apply to Hagel's PSU student housing.

Hagel also filed an appeal with the Oregon Court of Appeals (Hagel III) in which he challenged Yackley's decision to terminate Hagel's housing at Ondine. Although neither party identifies when Hagel filed Hagel III, Defendants state in their

Concise Statement of Facts that Hagel III is pending and Plaintiff does not deny that fact.

On December 2, 2004, Hagel filed this federal court action pursuant to 42 U.S.C. § 1983 in which he alleges Defendants deprived him of his property and liberty interests without due process. On February 15, 2005, Defendants filed their Motion for Summary Judgment seeking dismissal of all of Hagel's claims.

## **STANDARDS**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. A mere disagreement about a material issue of fact, however, does not preclude summary

7 - OPINION AND ORDER

judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## **DISCUSSION**

In his Second Amended Complaint, Hagel alleges Defendants deprived him of his property interest in his tenancy and possessory interest in his room at Ondine without due process. Hagel further alleges Defendants deprived him of his liberty interest in attending school at PSU without due process.

In their Motion for Summary Judgment, Defendants assert PSU is not a "person" who can be sued under § 1983. Defendants also contend Hagel's due-process claims regarding his alleged property interests in housing are barred by principles of claim preclusion and abstention. Finally, with respect to Hagel's due-process

claim regarding his alleged deprivation of a liberty interest in attending PSU, Defendants assert they provided Hagel with all of the process he was due before suspending him.

I.   **PSU Is Not a "Person" Who Can Be Sued under § 1983.**

Defendants contend PSU is an "arm of the State" of Oregon, and, therefore, pursuant to the Eleventh Amendment, it is immune from any action against it in federal court. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989)("a State is not a person within the meaning of § 1983," therefore, States have not waived their Eleventh Amendment immunity to actions in federal court under § 1983.).

In *Rounds v. Oregon State Board of Higher Education*, the Ninth Circuit analyzed the issue of whether the University of Oregon is an arm of the State of Oregon and, therefore, immune from suit under the Eleventh Amendment. 166 F.3d 1032, 1035 (9th Cir. 1999). The court considered the fact that Oregon law subjected the University of Oregon to the jurisdiction of the Board of Higher Education and required the President of the University to act under the Board's supervision. *Id*. at 1035 (citing Or. Rev. Stat. §§ 352.002, 352.004). The court also noted the University "performs the central governmental function of providing opportunities for 'deserving and qualified citizens to realize their aspirations for higher education.'" *Id*. (citing Or. Rev. Stat. §§ 351.003, 351.005). The court, therefore,

9 - OPINION AND ORDER

concluded the University is "an arm of the State of Oregon for Eleventh Amendment immunity purposes." *Id*.

The Court finds the analysis of the Ninth Circuit in *Rounds* applies here.  Like the University of Oregon, PSU is subject to the jurisdiction of the Board of Higher Education.  In addition, the President of PSU must act under the Board's supervision, and PSU provides the governmental function of providing opportunities for qualified citizens to obtain an education.  The Court, therefore, concludes PSU is an arm of the State of Oregon for Eleventh Amendment immunity purposes, and, as a result, PSU cannot be sued under § 1983 in this Court.

Accordingly, the Court grants Defendants' Motion for Summary Judgment with respect to all of Plaintiff's claims against PSU.

## II.  Claims Against Individual Defendants

Hagel alleges in his Complaint that he brings his action against Defendants Samuels, Endress, Toppe, and Yackley in their individual capacities.  Although the Eleventh Amendment generally bars actions against state officials in their official capacities because those actions against state officials are "in essence suits against the State," actions against state officials in their individual capacities are not precluded.  *Rounds*, 166 F.3d 1032, 1036 n.2.  The Court, therefore, must analyze Hagel's claims against the individual Defendants in their individual capacities.

### A. Deprivation of Property Interest in Housing in Ondine

Hagel alleges Defendants Toppe and Yackley violated his due-process rights when they deprived him of his tenancy and possessory interests in housing in Ondine. Defendants, however, contend these claims are barred by claim preclusion and abstention.

"The doctrine of res judicata bars a party from bringing a claim if a court of competent jurisdiction has rendered a final judgment on the merits of the claim in a previous action involving the same parties or their privies." *In re Int'l Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994)(citation omitted). An employer-employee relationship, such as the one that exists between PSU and Defendants Toppe and Yackley, generally satisfies the privity requirement for matters within the scope of employment. *See Spector v. El Ranco, Inc.*, 263 F.2d 143, 145 (9th Cir. 1959). *See also Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288 (5th Cir. 1989).

"Res judicata bars all grounds for recovery that could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *Clark v. Bear Sterns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992).

> The general rule in claim preclusion jurisprudence is: A plaintiff who has prosecuted one action against a defendant and obtained a valid final judgment is barred by res judicata from prosecuting another action against the same defendant where (a) the claim in the second action

>     is one which is based on the same factual
>     transaction that was at issue in the first;
>     (b) the plaintiff seeks a remedy additional or
>     alternative to the one sought earlier; and (c) the
>     claim is of such a nature as could have been
>     joined in the first action.

*Dodd v. Hood River County*, 59 F.3d 852, 862 (9th Cir. 1995) (*citing* Or. Rev. Stat. § 43.130 and *Van De Hey v. United States Nat'l Bank of Oregon*, 313 Or. 86, 829 P.2d 695 (1992)). In *Nutronics*, the Ninth Circuit noted the most important factor is "whether suits arise out of the same transactional nucleus of facts." *Nutronics*, 28 F.3d at 971.

Because Hagel dismissed his first state court case (Hagel I) voluntarily and without prejudice, it has no preclusive effect. Hagel's second state court action (Hagel II), however, proceeded to trial, and the state court entered a judgment against Hagel that dismissed the matter with prejudice. As noted, Hagel II involved Hagel's removal from Ondine, which is the same factual transaction underlying Hagel's § 1983 claims before this Court. Hagel could have brought these same § 1983 claims against the individual Defendants in state court on the grounds that Defendants violated his rights to due process when they deprived him of his property interest in tenancy and possession of his dorm room. Instead of doing so, Hagel now seeks an additional or alternative remedy under § 1983 in this Court arising out of the same set of facts. Accordingly, the Court concludes Hagel's First and Second Claims in which he alleges Defendants violated

his right to due process when they deprived him of his tenancy and possessory property interest in housing at Ondine are barred by issue preclusion.[1]  Defendants, therefore, are entitled to summary judgment on Hagel's First and Second Claims.

**B.    Deprivation of Hagel's Interest in Attending PSU**

Hagel contends Defendants Samuels and Endress violated Hagel's rights to due process when they deprived him of his liberty interest in attending PSU.  Even though Hagel pleads this claim as a deprivation of liberty interest in his Complaint, he does not recite any facts or allegations to support his position.

In *Goss v. Lopez*, the Supreme Court stated an individual may have a liberty interest in his "good name, reputation, honor or integrity."  419 U.S. 565, 574 (1975). The Supreme Court, however, held a student's right to a public education is a property right protected by the Due Process Clause.  *Id*. at 574.  Here Hagel does not make any allegations or argument regarding his reputation.  He contends only that he was deprived of the ability to attend school.  The Court, therefore, finds the proper analysis for Hagel's claim is under the rubric of a property interest.

The United States Constitution prohibits the deprivation of a "property interest" without procedural due process.  *Carey v.*

---

[1] Because the Court determines the issues in Hagel's First and Second claims are barred by claim preclusion, the Court need not reach the issue of abstention.

13 - OPINION AND ORDER

*Piphus*, 435 U.S. 247, 259 (1978). A constitutionally protected property interest arises only if there is a "legitimate claim of entitlement to it" rather than mere need, desire, or "unilateral expectation." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

In *Goss*, the Court held the plaintiff's ten-day suspension from high school without any hearing violated his due process rights. *Id*. at 584. The Court, however, stated, "[I]n the great majority of cases, [in order to satisfy due process] the disciplinarian may informally discuss the alleged misconduct with the student . . . after it occurred." *Id*. at 582. The Supreme Court further held: "[I]n being given an opportunity to explain his version of the facts at this discussion, the student first must be told what he is accused of doing and what the basis of the accusation is." *Id*.

In *Juran v. Independence OR Central School District 13J*, a student was suspended after he tested positively for the presence of alcohol during a Breathalyzer test. 898 F. Supp. 728, 730 (D. Or. 1995). Before his suspension, a school official counseled the plaintiff that he would be suspended for violating school rules. This district court found the counseling procedure sufficient to satisfy the due-process requirements set forth in *Goss*. *Id.* at 733.

Here Defendants sent Hagel numerous notices detailing the allegations against him and the sections of the Student Code of

Conduct implicated. Defendants provided Hagel with several opportunities to meet and to discuss the allegations, and they provided Hagel with numerous hearings accompanied by counsel before the Student Conduct Committee and opportunities to appeal the Committee's decisions.

To determine the process due with respect to Defendants' final suspension of Hagel, the Court must balance Hagel's due-process rights with the rights of PSU students and staff to health, safety, and welfare. *See Jurasek v. Utah State Hosp.*, 158 F.3d 506 (10th Cir. 1998)(balancing due process rights with interests of health and safety of hospital patients). In this case, Defendants provided significant evidence of their concerns regarding the escalation of Hagel's alleged threatening behavior. In light of the Defendants' need to protect the health, safety, and welfare of other students and staff at PSU, the Court concludes suspending Hagel without a hearing pending resolution of the Student Council's decision regarding the most recent complaints against Hagel did not violate his due-process rights. *See, e.g., Dixon v. Love*, 431 U.S. 105 (1977)(important public interest in safety on the roads and highways and in the prompt removal of a safety hazard outweighed Plaintiff's interest in a hearing before the revocation of his commercial driver's license).

Following the same analysis, the Court also concludes

Defendants provided Hagel with all of the process due him before his suspension.  As noted, the Student Conduct Committee will be meeting to take evidence and to make a recommendation regarding the most recent complaints against Hagel.  The Court finds the fact that the Committee did not meet before Hagel's suspension is not a denial of his due-process rights in light of the seriousness of the allegations (threats to students and staff) and in light of the history of serious complaints against Hagel, Hagel's misconduct after warnings, and the sanctions against Hagel by the Student Conduct Committee.

Accordingly, the Court concludes Defendants are entitled to summary judgment on Hagel's Third Claim.

In summary, the Court grants Defendants' Motion for Summary Judgment as to PSU on the ground that it is an arm of the State of Oregon for Eleventh Immunity purposes, and, as a result PSU cannot be sued under § 1983 in this Court.  The Court also grants Defendants' Motion for Summary Judgment as to the individual Defendants with respect to Hagel's First and Second Claims on the grounds that these claims are barred by principles of claim preclusion.  Finally, the Court grants Defendants' Motion for Summary Judgment as to the individual Defendants with respect to Hagel's Third Claim because the Defendants provided Hagel with all of the process due him before his suspension.

## **CONCLUSION**

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (#20).

IT IS SO ORDERED.

DATED this 9th day of June, 2005.

/s/ Anna J. Brown

ANNA J. BROWN
United States District Judge

Hagel CV 04-1770 O&O 06-08-05.wpd

17 - OPINION AND ORDER