IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ROBERT HAGEL,                              CV 04-1770-BR

          Plaintiff,                       OPINION AND ORDER

v.

PORTLAND STATE UNIVERSITY,
DR. DOUGLAS N. SAMUELS, DEAN
WENDY ENDRESS, ASST. DEAN
MICHELLE TOPPE, and DON YACKLEY,

          Defendants.


ANN BERRYHILL WITTE
812 S.W. Washington Street, #910
Portland, OR  97205
(503) 223-6066

          Attorney for Plaintiff

HARDY MYERS
Attorney General
PHILLIP M. BENDER
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR 97301
(503) 378-6313

          Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion for Summary Judgment (#45).  For the reasons that follow, the Court **GRANTS** Defendants' Motion.


## BACKGROUND

Plaintiff Robert Hagel was a student at Portland State University (PSU) until Defendant Douglas Samuels, Vice Provost for Student Affairs, suspended Hagel on November 19, 2004, on the ground that he constituted a substantial threat to the "health, personal safety, or property" of PSU students and staff.

**I.   Administrative Proceedings**

On July 29, 2004, Defendant Michelle Toppe, Assistant Dean of Students at PSU, sent Hagel a letter notifying him the Office of Student Affairs had received a complaint that Hagel might have violated PSU's Student Code of Conduct.  Toppe scheduled a meeting with Hagel to discuss the allegations on August 9, 2004.

Hagel attended the August 9, 2004, meeting with his counsel, Ann Witte.  At that meeting, Toppe discussed allegations that Hagel had flushed cat litter down the toilet in the Ondine residence hall, which caused damage to the plumbing.  Toppe also discussed an allegation that Hagel had posted to his dorm room door a note in which he stated Assistant Director of Residence Life "Scott Nine is a bitch ass liar!  Probably fucks his son in

2 - OPINION AND ORDER

the ass!"  Both of these actions would constitute violations of the PSU Student Code of Conduct.  Hagel requested to have his case heard by the Student Conduct Committee.

On September 9, 2004, the Student Conduct Committee heard Hagel's case and thereafter found Hagel had violated the PSU Student Code of Conduct.  On September 21, 2004, Toppe sent Hagel a letter in which she informed him of the Committee's decision, advised him that she concurred with the decision, and imposed three sanctions:  (1) restitution for the damages to the plumbing in Ondine; (2) loss of student-housing privileges starting October 12, 2004; and (3) placement on disciplinary probation for one year with the condition that any violations of the Student Code of Conduct occurring within that time likely would result in suspension.  Hagel appealed this decision to Defendant Don Yackley, Director of Residence Life.  Samuels, in turn, heard the appeal on November 2, 2004, and upheld the Committee's decision.

On August 31, 2004, Defendant Wendy Endress, Vice Provost for Student Affairs, sent Hagel a letter in which Endress stated the Office of Student Affairs had received complaints that Hagel again had violated the Student Code of Conduct.  Endress scheduled a meeting with Hagel to discuss these additional claims on September 22, 2004.  Endress later rescheduled the meeting for September 28, 2004.

At the September 28, 2004, meeting, Endress discussed four

conduct complaints received by the Office of Student Affairs regarding Hagel: (1) On August 23, 2004, Hagel refused to leave Toppe's office on request; (2) on August 27, 2004, Hagel refused to leave Ondine dormitory during a fire drill; (3) on September 2 and 14, 2004, Hagel flushed cat litter down the toilet in Ondine; and (4) on September 15, 2004, Hagel deposited human feces in the Ondine elevator. Hagel elected to have a hearing on these charges before the Student Conduct Committee.

On November 17, 2004, the Student Conduct Committee convened to hear the second case and thereafter found Hagel responsible on all charges. On December 15, 2004, Endress sent Hagel a letter in which she informed him of the decision of the Student Conduct Committee, advised him that she concurred with the decision, and imposed the following sanctions: (1) Hagel would be allowed on campus only to attend class for the remainder of the academic year; (2) if Hagel needed to come on campus for a purpose other than to attend class, he was required to make an appointment before any visit and to have a Campus Police Security Officer (CPSO) escort him; (3) Hagel was prohibited from initiating any contact with members of the Office of Student Affairs, the Student Conduct Committee, and any witnesses from the hearing; and (4) Hagel was placed on disciplinary probation for one year.

On October 20, 2004, Toppe sent Hagel a letter in which she stated the Office of Student Affairs again had received several

complaints that Hagel had violated the Student Code of Conduct,
including:  (1) reports of threats to harm or to kill Scott Nine
and his family, (2) reports that Hagel had guns in his dorm room,
(3) reports of Hagel's forced entry into a PSU building and
engagement in a physical altercation with a student working in
the office there, and (4) reports of Hagel's presence in the PSU
library after the building was closed.  Hagel elected to have
this case heard before the Student Conduct Committee.  Toppe
scheduled an investigatory meeting regarding the third set of
complaints on November 23, 2004, and, pursuant to Hagel's
request, Toppe scheduled the case to be heard by the Student
Conduct Committee on December 1, 2004.

On November 19, 2004, Samuels sent Hagel and his attorney a
letter in which he suspended Hagel pending resolution of the
final Student Council complaint based on Samuels's finding by
clear and convincing evidence that Hagel's presence at PSU
constituted a substantial threat to the health, personal safety,
and property of PSU students and staff.  In support of this
decision, Samuels noted:  (1) on October 23, 2004, Hagel
threatened the lives of students using the computer lab; (2) two
members of the Student Conduct Committee reported incidents in
which Hagel intimidated them, which caused them to recuse
themselves from additional hearings involving Hagel; (3) two
students who acted as witnesses against Hagel reported fear and

concern for their personal safety; and (4) one of the students who participated in a hearing involving Hagel reported Hagel made statements that intimidated and threatened her during a break in the proceedings.

## II.  Federal and State Court Proceedings

On September 24, 2004, Hagel filed an action in Multnomah County Circuit Court (Hagel I) alleging PSU "unlawfully ousted" him from his room in Ondine in violation of Or. Rev. Stat. § 90.105, Oregon's Residential Landlord and Tenant Act, and seeking a temporary restraining order against PSU.  The court denied Hagel's motion for a temporary restraining order and found Oregon landlord-tenant law did not apply to PSU dormitories. Hagel voluntarily dismissed Hagel I.

On October 13, 2004, Hagel filed another action in Multnomah County Circuit Court (Hagel II) alleging PSU violated Oregon landlord-tenant law when it terminated his housing contract.  On November 1, 2004, the action went to trial.  The court granted PSU's motion to dismiss pursuant to Oregon Rule of Civil Procedure 21A(8) at trial.

On December 2, 2004, Hagel filed this federal court action pursuant to 42 U.S.C. § 1983 in which he alleges Defendants deprived him of his property and liberty interests without due process and seeks injunctive relief and damages.  On June 9, 2005, the Court entered an Opinion and Order in which it granted

Defendants' Motion for Summary Judgment on the grounds that
(1) PSU cannot be sued under § 1983 in federal court pursuant to
the Eleventh Amendment because it is an arm of the State; (2) the
individual Defendants provided Plaintiff with all of the process
he was due before he was suspended, and, therefore, Plaintiff did
not establish he was deprived of a liberty interest in school
without due process; and (3) Plaintiff's claims for deprivation
of tenancy and deprivation of possessory interest in residence
were barred by claim preclusion because Hagel II involved the
same factual transaction that underlies Plaintiff's first and
second claims and Plaintiff could have brought these claims in
Hagel II.  Plaintiff appealed the Court's Opinion and Order.

On May 10, 2006, the Oregon Court of Appeals reversed the
state trial court's dismissal of Hagel II. *Hagel v. Portland
State Univ.*, 205 Or. App. 677 (2006).  The Oregon court reasoned
"the allegations of plaintiff's FED complaint were legally
sufficient . . . and . . . the trial court therefore erred in
dismissing the complaint pursuant to ORCP 21 A(8)."  *Id.* at 678.

On February 12, 2007, Hagel II again went to trial in
Multnomah County Circuit Court.  On February 13, 2007, the jury
found in favor of PSU, and the court entered a final judgment in
that matter.  On May 21, 2007, Plaintiff appealed the matter to
the Oregon Court of Appeals where it is currently pending.

On May 10, 2007, the Ninth Circuit issued an Opinion

7 - OPINION AND ORDER

affirming in part and reversing in part this Court's June 9,
2005, Opinion and Order.  The Ninth Circuit affirmed the Court's
dismissal of PSU, and the Court's holding that the individual
Defendants provided Plaintiff with all of the process he was due
before he was suspended.  The Ninth Circuit reversed the Court's
dismissal of Plaintiff's claims for deprivation of tenancy and
for deprivation of possessory interest in residence on the ground
that the Oregon Court of Appeals reversed the decision in Hagel
II after this Court issued its June 9, 2005, Opinion and Order.
Under Oregon law, therefore, the Hagel II decision on which this
Court relied did not have any preclusive effect.  The Ninth
Circuit remanded Plaintiff's claims for deprivation of tenancy
and deprivation of possessory interest in residence for further
proceedings, "including an examination of any potential
abstention issues."

     On August 31, 2007, Defendants filed a Motion for Summary
Judgment as to Plaintiff's claims for deprivation of tenancy and
deprivation of possessory interest in residence on the grounds
that (1) abstention bars this Court from interfering with the
Oregon Court of Appeal's consideration of Hagel II,
(2) Defendants are absolutely and qualifiedly immune from action
for damages on Plaintiff's claims, (3) issue and claim preclusion
bar Plaintiff's remaining claims, and (4) PSU provided Plaintiff
with all of the process he was due before they terminated

Plaintiff's housing contract.

## STANDARDS

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id*.  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving

party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.


## DISCUSSION

I. **Abstention**

A. **Standards**

Under principles of comity and federalism, a federal court should not interfere with ongoing state proceedings by granting declaratory or injunctive relief absent extraordinary circumstances. *Younger v. Harris*, 401 U.S. 37, 43-54 (1971). "Under Younger and its progeny, federal courts should abstain from intervening in pending state judicial proceedings out of deference to the interests of comity and federalism." *Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*, 48 F.3d 391, 393 (9th Cir. 1995)(citing *Ohio Civil Rights Comm'n v.*

10 - OPINION AND ORDER

*Dayton Christian Sch., Inc.*, 477 U.S. 619, 626-27(1986)). *See also Samuels v. Mackell*, 401 U.S. 66, 68-74 (1971).  Abstention applies under *Younger* when "(1) state judicial proceedings are pending; (2) the state proceedings involve important state interests; and (3) the state proceedings afford the federal plaintiff an adequate opportunity to litigate federal constitutional claims." *Wiener v. County of San Diego*, 23 F.3d 263, 266 (9th Cir. 1994).

　　　If a court finds abstention appropriate under *Younger*, the court must dismiss the matter. *Juidice v. Vail*, 430 U.S. 327, 348 (1977).  *See also Beltran v. Cal.*, 871 F.2d 777, 782 (9th Cir. 1988).

　　**B.    Analysis**

　　　Defendants note Plaintiff has filed an appeal of Hagel II, and that appeal is pending.  In addition, Defendants assert Hagel II involves the important state interests of PSU's ability to take disciplinary action against students and, in addition, the application of Oregon's landlord-tenant law.  Plaintiff does not dispute either of these points.  Instead Plaintiff contends he could not raise his claims for deprivation of tenancy and deprivation of possessory interest in residence without due process in his state-court proceeding because he brought his state-court case pursuant to Oregon's forcible entry or wrongful detainer (FED) statute, Or. Rev. Stat. § 105.110.  According to

Plaintiff, § 1983 actions cannot be joined with FED actions under
Oregon law because the § 1983 claims would destroy the summary
nature of the FED proceedings.  In addition, FED actions do not
bar actions for different relief.  To support his position,
Plaintiff relies on *Smith v. Morris*, 112 Or. App. 217 (1992);
*Stilwel v. Seibel*, 169 Or. App. 613 (2000); and a number of cases
from state courts in other jurisdictions.

     In *Smith*, the Oregon Court of Appeals held the
plaintiff's FED action was not an action "for the same cause"
within the meaning of Oregon Rule of Civil Procedure 21 A(3) as
the defendant's action for breach of lease because the FED action
concerned the plaintiff's right to possession of the property and
the breach of lease action concerned the defendant's right to
recover damages for breach of the lease.  112 Or. App. at 217.

     In *Stilwel*, the plaintiffs leased commercial property
to the defendants and ultimately filed two separate actions:  a
FED action seeking possession of the property and an action for
breach of the lease agreement based on failure to pay rent.  169
Or. App. at 614.  The parties resolved the FED action by
stipulated judgment of restitution of the premises and a money
judgment.  On appeal of the breach-of-lease action, the
defendants contended the plaintiffs were barred from pursuing
their claim for unpaid rent because the plaintiffs received a
judgment for unpaid rent in the FED action.  *Id.* at 616.  The

12 - OPINION AND ORDER

Oregon Court of Appeals concluded the plaintiffs were not barred from pursuing their claim for unpaid rent in their breach-of-lease action because the amount of unpaid rent was not at issue in the FED action, but it was "'the principal issue'" in the breach-of-lease action. *Id*. at 617 (quoting *Owen J. Jones & Son, Inc. v. Gospodinovic*, 46 Or. App. 101, 105 (1980)).  In addition, the Oregon Court of Appeals reasoned "'[t]he principal relief in an FED action is a judgment for restitution of the premises, while the action for rent seeks a money judgment. . . .  The two kinds of actions may be joined . . ., but joinder is not required.'"  *Id*. (quoting *Gospodinovic*, 46 Or. App. at 105).

Neither *Smith* nor *Stilwel* support Plaintiff's contention that he could not bring his claims for deprivation of tenancy and deprivation of possessory interest in the same state proceeding as his FED action.  Even if bringing these claims together with his FED action might have slowed an otherwise summary disposition of Plaintiff's FED proceeding, Plaintiff does not provide any authority to support his assertion that he is prohibited from bringing these claims together with a FED action such that the FED proceedings would not afford him "an adequate opportunity to litigate federal constitutional claims."

Accordingly, the Court concludes *Younger* abstention is appropriate in this matter and dismisses Plaintiff's claims of deprivation of tenancy and deprivation of possessory interest in

residence to the extent that he seeks injunctive relief as to
those claims.

## II.  Qualified Immunity

Defendants also contend they are entitled to qualified
immunity to the extent that Plaintiff's § 1983 claim seeks
damages for his claims for deprivation of tenancy and deprivation
of possessory interest in residence because Defendants reasonably
relied on PSU's administrative rules before they terminated
Plaintiff's housing contract.

Public officials are shielded from liability under § 1983
for civil damages "insofar as their conduct does not violate
clearly established statutory or constitutional rights of which a
reasonable person would have known." *Harlow v. Fitzgerald*,
457 U.S. 800, 806 (1982).  "If a public official could reasonably
have believed that his actions were legal in light of clearly
established law and the information he possessed at the time,
then his conduct falls within the protective sanctuary of
qualified immunity." *Orin v. Barclay*, 272 F.3d 1207, 1214 (9th
Cir. 2001)(citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)(*per
curiam*)).

Plaintiff contends Defendants failed to comply with Oregon
Revised Statute §§ 183.310 and 183.457 and Oregon Administrative
Rule 577-001-0105 because Defendants did not allow Plaintiff to
be represented by counsel at his hearing with Yackley.  Oregon

14 - OPINION AND ORDER

Revised Statute § 183.457 provides in pertinent part:

> (1) . . . unless otherwise authorized by another law, a person participating in a contested case hearing conducted by an agency described in this subsection may be represented by an attorney or by an authorized representative subject to the provisions of subsection (2) of this section.

§ 183.457 includes a list of 12 agencies addressed in subsection (1). PSU, however, is not among the agencies listed, and, therefore, it is questionable whether § 183.457 applies to the hearing at issue. Even if PSU was included in § 183.457(1), § 183.457(2) provides:

> (2) A person participating in a contested case hearing as provided in subsection (1) of this section may appear by an authorized representative if:

> (a) The agency conducting the contested case hearing has determined that appearance of such a person by an authorized representative will not hinder the orderly and timely development of the record in the type of contested case hearing being conducted.

As noted, for Plaintiff's counsel to attend the hearing, the hearing would have had to be moved, which would have hindered the timely development of the record and delayed a decision on the issues. The Court, therefore, concludes even if § 183.457(1) applied, Defendants did not violate § 183.457(1) when Yackley refused to move the hearing date to accommodate Plaintiff's counsel.

In addition, when making their decision to terminate Plaintiff's housing contract, Defendants relied Oregon

15 - OPINION AND ORDER

Administrative Rule 577-031-0140(1)(b) and (5), which provide in

pertinent part:

> (1) Any person may submit a written complaint to
> OSA alleging that a student . . . has engaged in
> conduct proscribed by this Code.
>
> * * *
>
> (b) A "Respondent" is defined as any student
> who is alleged to have engaged in conduct
> proscribed by the Code.
>
> * * *
>
> (5) If the Respondent chooses to have the Senior
> Conduct Officer hear the case, the Respondent will
> be given an opportunity to explain the alleged
> behavior and will be informed of the information
> supporting the charge.  All hearings are closed
> and information presented in them and supporting
> documents are confidential except as required by
> law.  The hearing is informal and does not follow
> administrative contested case or courtroom
> procedures:
>
> (a) If the Respondent fails to meet with the
> Senior Conduct Officer, the Senior Conduct Officer
> will take decide [*sic*] the matter in the
> Respondent's absence.  Failure to cooperate or
> appear shall not delay the disposition of the
> matter.
>
> (b) The Respondent may bring a third party advisor
> of his/her choice to the hearing as long as the
> availability of the advisor does not interfere
> with the timeliness of the hearing.  The
> Respondent will be expected to speak for him or
> her self at all times and may only use the advisor
> for consultation or support.  The Respondent may
> elect to have an attorney serve as advisor.

As noted, Plaintiff chose to have his case heard by Yackley,

Defendants provided Plaintiff with a time for the hearing and the

opportunity to explain his behavior, and Plaintiff did not attend

16 - OPINION AND ORDER

the hearing.  Plaintiff contends he did not attend the hearing because his counsel could not be present at the time of the hearing and Yackley refused to move the hearing to accommodate counsel.  The Administrative Rule, however, provides a respondent with the right to bring a third-party advisor only if the availability of the advisor does not interfere with the timeliness of the hearing.  The Administrative Rules on which Defendants relied do not require them to move the hearing in order to accommodate counsel.  In addition, as the Court noted in its June 9, 2005, Opinion and Order, Defendants have the duty to protect the health, safety, and welfare of PSU students and staff.  In light of the conduct that Plaintiff was accused of engaging in, a delay in the proceedings could have prejudiced the health, safety, and welfare of the PSU students and staff.

On this record, the Court finds Plaintiff has not established Defendants' "conduct . . . violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known."  Under the circumstances, Defendants "could reasonably have believed that [their] actions were legal in light of clearly established law and the information [they] possessed at the time."  Accordingly, the Court concludes Defendants are entitled to qualified immunity on Plaintiff's claims for deprivation of tenancy and deprivation of possessory interest in residence and, therefore, grants

17 - OPINION AND ORDER

Defendants' Motion for Summary Judgment.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (#45).

IT IS SO ORDERED.

DATED this 14th day of November, 2007.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

18 - OPINION AND ORDER